1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   LEROY WILLIAMS, JR.,                    CASE NO. C22-5840 MJP

11                    Plaintiff,             ORDER DENYING DEFENDANT
                                             NATIONSTAR'S MOTION FOR
12          v.                               SUMMARY JUDGMENT

13   EXPERIAN INFORMATION
     SOLUTIONS, INC., et al.,
14
                     Defendants.
15

16

17          This matter comes before the Court on Defendant Nationstar Mortgage LLC's Motion for

18   Summary Judgment. (Dkt. No. 59.) Having reviewed the Motion, Plaintiff's Response (Dkt. No.

19   62), the Reply (Dkt. No. 64), and all supporting materials, the Court DENIES the Motion.

20                                        **BACKGROUND**

21          Plaintiff Leroy Williams, Jr. pursues claims under the Fair Credit Report Act (FCRA)

22   against three credit reporting agencies (CRAs)—Equifax, Experian, and Transunion—as well as

23   Merrick Bank Corporation and Nationstar Mortgage, LLC. He alleges that each Defendant has

24   violated the law by incompletely and/or inaccurately reporting derogatory information on his

credit report. Since filing suit, Williams has settled with all but TransUnion and Nationstar. As to Nationstar, Williams alleges that it failed to report complete and accurate information about delinquent payments due on a loan in Williams' name that are the sole responsibility of his ex-wife through a divorce decree. He alleges that Nationstar was aware of this fact and that its failure to both investigate and add this detail to its report to the CRAs violated the FCRA. Because Nationstar moves for summary judgment, the Court reviews below those facts relevant only to Nationstar.

Williams' FCRA claims against Nationstar center on a loan Williams' then-wife took out in his name in 2003 for a property in South Carolina while Williams was deployed in the military. (See Dkt. No. 59-1; Deposition of Leroy Williams, Jr. at 20 (Dkt. No. 59-6).) Williams' wife signed the loan as his "attorney in fact," but as part of a divorce decree entered into in 2008, she agreed to take "the use, possession, and ownership of" the property, "satisfy all obligations related to said property," and both hold harmless and indemnify Williams as to the property. (Dkt. No. 59-5 at 3.) As part of the divorce, Williams did not record any form of sale or transfer of the property or assign the loan to his ex-wife, and he does not presently dispute that he owed obligations under the loan through at least 2018.

Roughly ten years after the divorce, Nationstar became the servicer of the loan at issue from August 2017 to October 2018. (Deposition of Kristen Trompisz at 18, 38, 41 (Dkt. No. 59-7).) Nationstar then reported to the CRAs that Williams was 90 days delinquent on the October 2017, March 2018, and August 2018 payments. (Id. at 19; Declaration of Kristen Trompisz at ¶ 8 (Dkt. No. 59-11).) Although Williams was not living at the property, he became aware of the delinquent payments when he pulled a credit report in 2017. (Williams Dep. at 43 (Dkt. No. 59-6).)

1    Between 2017 and 2022, Williams filed eleven different disputes with the CRAs

2    concerning the delinquent payments to Nationstar. (Trompisz Decl. ¶¶ 9-10 & Exs. C-L.) In late

3    2017, Williams filed a dispute with the CRAs, and Nationstar received a copy of the dispute. (Id.

4    ¶ 10 & Ex. C.) Nationstar refused to change the reported delinquencies. In 2020, Williams

5    submitted another round of requests to the CRAs to have his credit report remove the Nationstar

6    delinquencies, and he included a copy of the 2008 divorce decree. (See id. Ex. D.) Nationstar

7    again refused to make any changes in the delinquent payments. (Id. ¶ 10(b).) In 2021, Williams

8    submitted more disputes of the late payments, again pointing out that the property in question

9    was awarded to his ex-wife in 2008 and she assumed the obligation to repay the loan. (Id. Ex. E.)

10   Williams filed five more disputes in 2021 and three in 2022. (Id. ¶ 10(d)-(j) & Exs. F-L.)

11   Nationstar refused to remove or alter the report of delinquent payments.

12    As part of his lawsuit, Williams concedes that he was responsible for the loan payments,

13   but that it was inaccurate and misleading for Nationstar not to make a notation that Williams' ex-

14   wife had assumed responsibility to make the payments. (See Resp. at 2 (Dkt. No. 62).) Williams

15   makes no claim that "he was absolved of liability for this loan by the divorce decree" or that

16   Nationstar could not "continue to report late payments on his account post-divorce." (Id.)

17   "Instead, Mr. Williams alleges that it was incomplete and misleading – and therefore inaccurate

18   under the FCRA – to report these late payments without also including some verbiage regarding

19   this assignment of responsibility for the loan payments." (Id. (emphasis in the original).)

20   Williams also argues that Nationstar failed to adequately investigate his disputes. (Id.; see

21   Compl. ¶¶ 109-10.)

22    Nationstar contends that it not only accurately reported the delinquent payments, but also

23   thoroughly investigated the disputes as required by FCRA. In support of the claimed

24

1   investigation, Nationstar relies exclusively on the declaration and testimony of its corporate

2   witness, Kristen Trompisz. The Court reviews Trompisz's declaration and testimony in some

3   detail, as it goes to the heart of one aspect of Williams' FCRA claims.

4           In her declaration, Trompisz avers Nationstar "investigated Mr. Williams' credit disputes

5   received from CRAs and submitted corresponding ACDV [automated credit dispute verification]

6   responses." (Trompisz Decl. ¶ 10 (Dkt. No. 59-11).) Trompisz further asserts that Nationstar

7   "review[ed] relevant information provided to it by the CRAs and relevant information in Mr.

8   Williams' loan file including the Note, Mortgage, Divorce Decree, payment history, and

9   communication history profile." (Id. ¶ 11.) And after investigating the disputes, Nationstar then

10  "confirmed the loan was the responsibility of Mr. Williams as the sole borrower and the

11  reporting of late payments was accurate." (Id. ¶ 12.) Trompisz's deposition testimony does not

12  quite support her declaration. In her deposition, Trompisz admitted that there were no written

13  records showing what was done to investigate each complaint and that she simply assumed the

14  investigators followed procedures in their review. (Trompisz Dep. at 27, 29-30, 34-35, 37 (Dkt.

15  No. 62-3).) As to the first dispute, Trompisz testified that the Nationstar employee "would have

16  reviewed the loan, reviewed the loan documents, specifically the note and mortgage, verified the

17  social security number, and confirmed that the account did belong to Leroy Williams."

18  (Trompisz Dep. 27.) But Trompisz conceded she had no personal knowledge of what was done

19  and that there were no records of what steps were taken. (Id.) Instead, she based her testimony on

20  an assumption of what the employee "would have done if he was following proper procedures."

21  (Id.) She provided this same general testimony about all of the disputes. (Id. at 29-30, 34-35, 37.)

22  And she conceded that "[t]here is no written step-by-step as to what they [the investigators] did

23  for the investigation." (Id. at 68.)

24

ORDER DENYING DEFENDANT NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 4

**ANALYSIS**

**A.    Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

Generally, reasonableness determinations in the context of an FCRA claim are inappropriate to resolve on summary judgment. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009). But summary judgment can be appropriate "when only one conclusion about the conduct's reasonableness is possible." Id. (citation and quotation omitted).

**B.    FCRA's Duties on Furnishers**

The FCRA imposes a duty on furnishers of credit information (or "furnisher") to supply accurate information to the CRAs. 15 U.S.C. § 1681s-2(a). If a furnisher determines that it supplied information that was "not complete or accurate," it must provide all information to the

CRAs "necessary to make [the submission] . . . complete and accurate." 15 U.S.C. § 1681s-2(a)(2). The FCRA also allows consumers to put furnishers on notice of inaccuracies and incompleteness by lodging consumer disputes with the CRAs. Once a CRA receives a consumer dispute, it forwards the dispute notice to the furnisher, who must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). "These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection." Gorman, 584 F.3d at 1154.

Though the FCRA does not define the term "investigation," the Ninth Circuit has concluded that "the term 'investigation' on its own force implies a fairly searching inquiry." Gorman, 584 F.3d at 1156. "[A]n 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." Id. at 1155. Stated another way, an investigation cannot be unreasonable, meaning that a "cursory investigation" is inadequate. Id. at 1155-56. Additionally, the reasonableness of the

1    review will turn, at least in part, on "what [the furnisher] learned about the nature of the dispute

2    from the description in the CRA's notice of dispute." Id. at 1157. But, as the Ninth Circuit points

3    out, "[i]n deciding that the notice determines the nature of the dispute to be investigated, we do

4    not suggest that it also cabins the scope of the investigation once undertaken." Id. at n.11. In

5    other words, even a limited notice requires a reasonable investigation.

6         The Court also notes that "[t]he FCRA expressly creates a private right of action for

7    willful or negligent noncompliance with its requirements" but only as to those duties listed in

8    1681s-2(b). Gorman, 584 F.3d at 1154 (citing 15 U.S.C. §§ 1681n & o). This includes the duty to

9    report accurate information and undertake a reasonable investigation of a consumer dispute. See

10   Gross v. CitiMortgage, Inc., 33 F.4th 1246, 1251 (9th Cir. 2022). But "before a court considers

11   the reasonableness of the agency's procedures, the consumer must make a prima facie showing

12   of inaccuracy in the agency's reporting. Id. (citation and quotation omitted).

13   **C.    Williams' Inaccurate Reporting Claim Must Proceed to Trial**

14        Nationstar argues that it met its obligation under the FCRA to report complete and

15   accurate information to the CRAs because it correctly reported that Williams was obligated to

16   make loan payments per the mortgage loan. Although Williams concedes his obligation, he

17   convincingly argues that Nationstar owed a duty to make a more complete report to acknowledge

18   that his ex-wife had taken on all responsibilities to repay the loan. This evidence precludes

19   summary judgment, and the Court DENIES the Motion as to this claim.

20        "The FCRA seeks to ensure 'fair and accurate credit reporting.'" Spokeo, Inc. v. Robins,

21   578 U.S. 330, 334 (2016), as revised (May 24, 2016) (quoting 15 U.S.C. § 1681(a)(1)). "In

22   addition to requiring that a furnisher conduct a reasonable investigation of a consumer dispute, §

23   1681s–2(b) also requires a creditor, upon receiving notice of such dispute, to both report the

24

1   results of the investigation and, 'if the investigation finds that the information is incomplete or

2   inaccurate, report those results' to the CRAs." Gorman, 584 F.3d at 1162 (quoting 15 U.S.C. §

3   1681s–2(b)(1)(C), (D)). "[A] credit entry can be 'incomplete or inaccurate' within the meaning

4   of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to

5   such an extent that it can be expected to adversely affect credit decisions.'" Id. at 1163 (quoting

6   Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998) and citing Koropoulos

7   v. Credit Bureau, Inc., 734 F.2d 37, 40 (D.C.Cir. 1984) ("Certainly reports containing factually

8   correct information that nonetheless mislead their readers are neither maximally accurate nor fair

9   to the consumer...."). "The consumer must still convince the finder of fact that the omission of

10   the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have

11   an adverse effect.'" Id. at 1163 (quoting Saunders v. Branch Banking & Trust Co. of Va., 526

12   F.3d 142, 150 (4th Cir. 2008) (quotation omitted)). "In other words, a furnisher does not report

13   'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to

14   report a meritless dispute, because reporting an actual debt without noting that it is disputed is

15   unlikely to be materially misleading." Id. "It is the failure to report a bona fide dispute, a dispute

16   that could materially alter how the reported debt is understood, that gives rise to a furnisher's

17   liability under § 1681s–2(b)." Id.

18         A dispute of fact here exists as to whether it was inaccurate or misleading for Nationstar

19   to omit information concerning the divorce decree, including the fact that Williams' ex-wife

20   agreed to repay the loan and indemnify him. The Court acknowledges Williams' concession that

21   the mortgage obligates him to repay the debt, and that a "'judgment in a divorce action cannot

22   alter or amend the rights of non-party creditors,' as Defendant puts it." (Resp. at 21.) But the

23   Court finds Williams' argument convincing that it was inaccurate for Nationstar not to include

24

some reference to the divorce decree, which provide additional, material information about the

delinquent loan amounts. (Id.) A jury may find it materially misleading for Nationstar to have

omitted the fact that Williams' ex-wife had assumed the loan and agreed to indemnify Williams.

See Gorman, 584 F.3d at 1163. Even though Williams does not dispute that he was obligated the

repay the loan, he has a reasonable and persuasive argument that a creditor might well view him

more positively if it knew his ex-wife had agreed to pay the loan and to indemnify him. It is for

the jury to determine whether this omission was materially misleading and if it is expected to

have adversely affected decisions concerning Williams' credit. See id. On this basis, the Court

DENIES the Motion as to this claim.

Three district court decisions that Williams cites, and which considered similar facts

about debts impacted by divorce decrees, also support denial of the motion for summary

judgment. (Resp. at 21-25 (citing Hillis v. Trans Union, LLC, 969 F. Supp. 2d 419 (E.D. Pa.

2013); Radley v. Experian Info. Sols., Inc., No. 117CV02755JBSJS, 2018 WL 3210515 (D.N.J.

June 29, 2018); Fields v. Trans Union, LLC, No. CV 17-2939, 2018 WL 1508746 (E.D. Pa. Mar.

27, 2018)).) In each of these cases, the plaintiff had taken on an obligation to repay a debt, but,

through a divorce decree, their former spouse agreed to repay the debt and indemnify the

plaintiff. Hillis, 969 F. Supp. 2d at 421; Radley, 2018 WL 3210515, at *1; Fields, 2018 WL

1508746, at *1. In each case, the court examined whether it was inaccurate for a credit

information furnisher or CRA to report the debt on the plaintiff's credit report without also

noting that the divorce decree impacted their obligation to repay. Id. And in each case, the court

refused to dismiss the FCRA claims. These cases support the notion that even if the plaintiff

might remain obligated on a loan, a credit furnisher can nonetheless violate the FCRA by failing

1  to provide complete and accurate information about the impact of a divorce decree on the

2  plaintiff's obligations to repay.

3        The Court finds itself unconvinced by Nationstar's two efforts to distinguish these cases.

4  First, Nationstar argues that all three cases are factually distinguishable because the ex-spouses

5  were co-signers on the debts who were already obligated to repay. (Reply at 5-6.) But this is a

6  distinction without a difference. Whether the plaintiff's ex-spouse was also on the loan does not

7  impact the question of whether the furnisher or CRA violates the FCRA by not including some

8  notation that the divorce agreement impacted the plaintiff's obligation to repay. That information

9  remains relevant whether the ex-spouse was on the initial debt or not. Second, Nationstar argues

10  that Radley is further distinguishable because the plaintiff recorded a quitclaim deed and

11  formally assigned her interest to her ex-husband, while Williams made no such conveyance.

12  (Reply at 6.) This fact did not feature in or impact court's analysis in Radley. As in the other two

13  cases, the plaintiff in Radley conceded he owed a contractual duty to repay the loan and that this

14  obligation was not absolved through a divorce decree or assignment. Like Williams, the plaintiff

15  in Radley argued it was inaccurate to report the delinquent trade line without noting the existence

16  of the assignment of obligation to the ex-spouse. That point is relevant to the claim presented by

17  Williams, and makes Radley persuasive.

18        Lastly, Nationstar presents a lengthy argument that it should not face liability on

19  Williams' claim because it could not or should not report the debt as being Williams' ex-

20  spouse's obligation. (Reply at 5-7.) But the question of what Nationstar could or should report as

21  to Williams' ex-spouse's is irrelevant. The sole question at issue is whether Nationstar should

22  have reported more complete information as to Williams given what it knew about the divorce

23  decree. The Court finds Nationstar's argument unpersuasive and irrelevant.

24

**D.      Williams' Inadequate Investigation Claim Must Go to the Jury**

Nationstar has failed to provide undisputed evidence that might permit only one conclusion that its investigations into Williams' disputes were reasonable. See Gorman, 584 F.3d at 1157. Nationstar's relies on its corporate witness, Trompisz, to support its argument that its investigation into each dispute was reasonable. But Trompisz lacks personal knowledge of what was reviewed and based her conclusions about the scope of each investigation solely on her presumption that the Nationstar employees who responded followed procedures. There are no records or evidence showing what investigation was actually performed. Instead, Nationstar simply points to the fact that they provided a response to the CRAs. But there is no affirmative evidence in the record showing what the investigation was and whether it was reasonable. This fatal to Nationstar's Motion. A jury must determine whether Nationstar's investigation was inadequate, which appears to require some assessment of whether Nationstar's corporate witness is believable as what the other Nationstar employees may or may not have done to investigate the disputes. On the record before it, the Court cannot reach "only one conclusion about the conduct's reasonableness[.]" See Gorman, 584 F.3d at 1157 (citation and quotation omitted). This Court DENIES the Motion as to this claim.

**E.      Williams has Identified Sufficient Evidence of Damages**

Nationstar has failed to convince the Court that there is inadequate evidence of damages.

The FCRA permits the recovery of "actual damages" caused by defendants' failure to comply with the law. 15 U.S.C. 1681o(a)(1). The Ninth Circuit recently clarifies that "[s]uch damages could include recovery for the 'emotional distress and humiliation' allegedly caused by [defendant's inaccurate] reports and [the plaintiff's] resulting financial difficulties." Gross, 33 F.4th at 1253 (quoting Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir.

1    1995)). And "a failure to comply with § 1681e(b) [the FCRA's duty to follow reasonable

2    procedures to assure accuracy] is actionable even absent a denial of credit. Guimond, 45 F.3d at

3    1333 (considering CRA liability, not a furnisher's liability). While the Ninth Circuit has not

4    stated what sort of evidence is required to support an award of emotional damages under the

5    FCRA, "district courts in the Ninth Circuit do not require objective evidence of emotional

6    distress, but instead allow a plaintiff's testimony alone to support an award of emotional distress

7    damages." Grigoryan v. Experian Info. Sols., Inc., 84 F. Supp. 3d 1044, 1086 (C.D. Cal. 2014)

8    (collecting cases). As the Court in Grigoryan noted, the Ninth Circuit has upheld an award of

9    damages for emotional distress based on testimony alone. Id. (citing Zhang v. Am. Gem

10   Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003) and Johnson v. Hale, 13 F.3d 1351, 1352–53

11   (9th Cir. 1994)).

12        Williams has provided sufficient evidence of actual damages to defeat summary

13   judgment. First, Williams has testified that he was denied a loan from Veteran's United because

14   he was unable to clear up the inaccurate reporting from Nationstar. (See Williams Dep. at 54-55;

15   see also Resp. to Interrogatory No. 6 (Dkt. No. 62-5).) He also testified that his inability to clear

16   up the Nationstar payments on his credit report meant that he could not qualify for a loan in the

17   2021 time-frame when the interest rates were far more favorable than they are now. (Williams

18   Dep. at 54-57.) Second, Williams testified that he suffered emotional distress on account of

19   being unable to clear up the Nationstar reports on his credit. (Williams Dep. at 54-55.) He

20   specifically testified:

21        So I was under a lot of emotional stress. I was embarrassed that I was getting out of the
          military after 26 years and not being able -- not being able to get a house. I was
22        frustrated, not sleeping, not sleeping much. My blood pressure -- my blood pressure been
          up, you know, every time just thinking about where I'm in at life right now. That causes
23        me emotional distress and anxiety.

24

ORDER DENYING DEFENDANT NATIONSTAR'S MOTION FOR SUMMARY JUDGMENT - 12

1     (Id. at 55.) He also testified that his blood pressure had increased on account of "still being in an

2     apartment" and that a doctor recently prescribed lisinopril to treat his fluctuating blood pressure.

3     (Id. at 85.) Third, Williams has testified that on account of the delinquent Nationstar payments

4     on his credit report, he has had to pay higher interest rates on his credit cards and did not qualify

5     for credit to buy a bed without the assistance of his spouse. (Id. at 72-85; see also Resp. to

6     Interrogatory No. 6.) The Court finds this evidence sufficient to show a dispute of fact as to

7     actual damages caused by Nationstar's alleged violations of FCRA, and DENIES the Motion as

8     to this issue.

9           The Court rejects Nationstar's argument that Williams has provided only speculative

10    evidence of damages. This argument essentially ignores the testimony and, at best, suggests that

11    emotional damages must be supported by objective evidence. But Nationstar cites to no law that

12    requires objective evidence. And Nationstar elsewhere concedes that emotional distress and

13    humiliation can be evidence of actual damages. (See Reply at 8 (citing Gross, 33 F.4th at 1253).)

14    It is for a jury to decide the question of damages in this case.

15    **F.     Williams' Claims Are Timely**

16          Finally, Nationstar argues that Williams cannot pursue his FCRA claims because he filed

17    suit far outside the two-year limitations period. While the Parties agree that Williams cannot sue

18    for the handling of his 2018 and 2020 disputes, he argues his claims are timely as to his

19    "different and more specific disputes in 2021 and 2022." (Resp. at 29.) The Court agrees with

20    Williams.

21          The FCRA requires a plaintiff to bring an action within the earlier of "(1) 2 years after

22    the date of discovery by the plaintiff of the violation that is the basis for [the furnisher's]

23    liability; or (2) 5 years after the date on which the violation that is the basis for such liability

24

1    occurs." 15 U.S.C. § 1681p. Although there is no Ninth Circuit authority on point, the majority

2    view holds that the statute of limitations accrues from the date of each re-report of inaccurate

3    information or failure to investigate a disputed debt. See Vasquez v. Bank of Am., N.A., No. 15-

4    CV-04072-RS, 2015 WL 7075628, at *3 (N.D. Cal. Nov. 13, 2015); Gandert v. Embry-Riddle

5    Aeronautical Univ., Inc., No. SACV2001320CJCJDEX, 2020 WL 12575072, at *2 (C.D. Cal.

6    Sept. 28, 2020); Thomas v. Wells Fargo Bank, N.A., No. 1:17-CV-3146-TWT-JSA, 2018 WL

7    3719589, at *7 (N.D. Ga. May 30, 2018), report and recommendation adopted, No. 1:17-CV-

8    3146-TWT, 2018 WL 3708441 (N.D. Ga. Aug. 3, 2018); Lavender v. Experian Info. Sols., Inc.,

9    No. CV 21-4739, 2023 WL 3739041, at *5 (E.D. Pa. May 30, 2023). These courts reason that

10   making an inaccurate report or failing to investigate a dispute presents a new, actionable

11   violation of the FCRA even if there are previous disputes on file. See id. And treating each act

12   independently aligns with the FCRA's remedial objectives, the liberal construction that applies

13   to the law, and the nature of the harms that inaccurate credit reports can cause. See Thomas,

14   2018 WL 3719589, at *5 (citing Guimond, 45 F.3d at 1333). The Court finds the reasoning

15   behind these cases persuasive, and applies the majority approach.

16          The Court finds that Williams' claims concerning the handling of his 2021 and 2022

17   credit disputes are timely filed. Williams concedes that he became aware of Nationstar's initial

18   inaccurate reports by 2018 and that he is "plainly unable to sue over any claims arising from

19   Nationstar's investigations of his 2018 and 2020 disputes, and cannot seek recovery for damages

20   resulting from Nationstar's shoddy investigations of those disputes." (Resp. at 29.) But he argues

21   his 2021 and 2022 disputes present independently actionable FCRA violations. The Court agrees.

22   The disputes Williams filed in 2021 and 2022 were not just new, but far more substantively

23   robust as compared to his prior disputes. Williams' 2018 and 2020 disputes were thin. (See Exs.

24

C & D to Trompisz Decl. (Dkt. No. 59-11 at 23-84).) The 2018 dispute lacks any specifics and did not include information about the divorce decree. The 2020 dispute included a copy of the divorce decree and a letter stating that the initial "Loan Company . . . removed [his] name," and that Williams had assumed the loan was moved over to his ex-wife. (See Dkt. No. 59-11 at 35.) But unlike his 2021 and 2022 disputes, the 2020 dispute did not explain what information was inaccurate or what further information Nationstar should report. (Compare id. at 35-36 with Dkt. No. 62-4.) Williams' more recent disputes contain far more detail and provide better clarity to support his requests. Given that the 2021 and 2022 disputes were not just serial repeats, and, instead, presented new, specific arguments, the Court treats them as distinct disputes from which new FCRA claims accrued. On this basis, the Court finds Williams' claims related to his 2021 and 2022 disputes timely filed. The Court therefore DENIES the Motion as to this issue.

Separately, the Court notes that although Nationstar suggests there is a "circuit split" on this issue, it cites to no appellate cases or any authority that would support its apparent position that any and all of Williams' FCRA claims are untimely. (See Reply at 11.) The solitary Ninth Circuit case Nationstar cites stands merely for the proposition that FCRA has a two year statute of limitations which begins from the date of discovery. See Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1110 (9th Cir. 2012). The only "split" Nationstar has pointed to is a difference of opinion among district courts, not appellate courts. And, on this issue, the majority have adopted Williams' position. See Lavender, 2023 WL 3739041, at *5. The Court declines to follow Nationstar's unsupported argument.

**CONCLUSION**

Nationstar has failed to demonstrate that it is entitled to summary judgment on either of Williams' FCRA claims. A jury must determine whether Nationstar failed to provide complete

1  and accurate information to the CRAs and whether it inadequately investigated Williams'

2  disputes. Williams has identified sufficient information to permit his claims to proceed, including

3  as to damages. And the Court finds that his claims arising out of the 2021 and 2022 disputes are

4  timely filed. The Court therefore DENIES the Motion for Summary Judgment.

5        The clerk is ordered to provide copies of this order to all counsel.

6        Dated February 15, 2024.

7

8        Marsha J. Pechman
      United States Senior District Judge